IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN MICROSYSTEMS INC,<br><br>             Plaintiff,<br><br>    v.<br><br>NETWORK APPLIANCE,<br><br>             Defendant. | No. C-08-01641  EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART NETAPP'S MOTION TO COMPEL AND GRANTING IN PART AND DENYING IN PART OUTSTANDING ISSUES SUN SEEKS FROM NETAPP** |

On November 23, 2009, the parties filed two joint two-page letters concerning discovery disputes relating to: (1) discovery NetApp is seeking from Sun, and (2) discovery Sun is seeking from NetApp.  The Court allowed the parties to file two joint briefs to fully address the issues raised in the discovery letters.  The parties have now submitted additional joint briefing, along with accompanying declarations and requests to seal, seeking to compel various discovery from each other.  For the following reasons, the Court GRANTS IN PART and DENIES IN PART NetApp's motion to compel and GRANTS IN PART and DENIES IN PART Sun's requests regarding outstanding issues Sun seeks from NetApp.

The Court notes its concern that many of the issues raised by these briefs likely could have been resolved by the parties without Court involvement.  In order to allow this case and related cases to proceed as efficiently as possible, the Court has previously allowed the parties to raise discovery issues by way of joint letter briefs, and has resolved some discovery disputes without requiring noticed motions.  However, this expedited procedure was not intended to encourage the parties to proliferate discovery disputes for resolution by the Court because it is less burdensome on the parties to do so, while increasing the burden the Court.  The joint briefs filed by the parties raised at least 14 different issues for the Court to resolve, constituting the functional equivalent of multiple

motions to compel. The Court is, of course, willing to work with the parties to resolve their disputes as necessary, but will be unable to proceed expeditiously to resolve the parties' more substantive disputes if this unfortunate trend of raising multiple discovery issues on a rolling basis continues. The parties are therefore encouraged, once again, to seek Court involvement only where it is truly required.

# I. Discovery Sun Seeks From NetApp

## A. Interrogatory 21

This interrogatory seeks information about the extent to which each NetApp accused product is made, used, sold, offered for sale, imported or distributed within the United States, including how many units are imported, exported, made, used, sold, offered for sale, imported or distributed within the United States on a monthly basis.

NetApp's response pointed to documents that it contends contain the requested information. See Ho Decl. In Support of NetApp's Portion of Joint Brief, Ex. A. Sun argues that the documents are not self-explanatory and no one at NetApp has been able to explain the meaning of the relevant columns within the documents or the codes therein. NetApp responds that the documents provided contain "Supplier Mapping" information which indicates on its face where each supplier is located, and thus whether and to what extent NetApp products are made in the United States. Id., Ex. B. Specifically, the "Supplier Flag" column has three values: US, FC, or UNKNOWN, and NetApp's portion of the joint brief states that these values indicate whether a supplier is located in the United States, a Foreign Country, or its location is Unknown. Joint Brief at 8:23-9:4. NetApp confirms that it will supplement its response to Interrogatory 21 to include descriptions of these three possible values. Id. at n. 4. Therefore to the extend that Sun complains that the "Supplier Flag" codes are indecipherable, NetApp has addressed this concern. Sun also complains that the "Supplier" column contains unknown alphanumeric codes that NetApp has not explained. NetApp persuasively responds that this column pertains to the identity of its various suppliers, and the Interrogatory did not request identity information, so it need not supplement this information.

Finally, Sun contends briefly that the response did not include the number of units sold or

1  distributed within the United States.  NetApp does not address this point other than to say that Sun's
2  response to its Interrogatory 26 similarly does not contain this information (other than an
3  "approximation" of location and revenue attributable to the United States) and any order to produce
4  additional information should be bilateral.  This excuse is insufficient.  Therefore Sun's request that
5  NetApp supplement its response to Interrogatory 21 is DENIED, except as to the number of units
6  sold or distributed in the United States, which NetApp is Ordered to provide.  While the Court will
7  not decide the dispute regarding Sun's alleged failure to provide similar information because the
8  issue is not properly before it, the Court notes that the same standard should generally apply to both
9  sides.

### B.   Interrogatories 27-29

These interrogatories seek information on NetApp's use of Solaris in products at issue in this litigation.  Number 27 asks for identification of NetApp customers that operate Solaris on any NetApp product, including revenue and support service revenue relating to Solaris.  Number 28 asks to identify each NetApp product that can support Solaris.  Number 29 seeks to identify each NetApp product certified to run Solaris via the Solaris Ready Program.

Sun argues that Solaris is an accused product and information about NetApp's use and revenue associated with it in any of its products is relevant to damages, and Sun does not have access to this information.  NetApp counters that it has produced the requested information with respect to the product at issue in the -1641 case, SANscreen, by stating that Solaris does not operate on SANscreen.  See Ho Decl., Ex. D at 8-10.  NetApp argues that it should not be required to produce irrelevant information about other NetApp products at issue in the two other cases after discovery in those cases has closed.  Additionally, according to NetApp, this would impose an undue burden on it because it is very unlikely that someone using NetApp hardware would replace DataONTAP with Solaris, and NetApp does not support or track isolated instances of replacement, so this investigation would be burdensome.  NetApp further argues that Sun has information about which NetApp products are certified under the Solaris Ready Program responsive to Number 29.

Sun's request that NetApp supplement its responses to Interrogatories 27-29 is DENIED. NetApp is not required to produce information about products not at issue in the -1641 case, and it

has already produced information as to SANscreen. Requiring NetApp to undertake an extensive search for isolated instances of customers who have replaced DataONTAP with Solaris would be unduly burdensome in light of the limited potential benefit to Sun. Finally, Sun has not adequately explained why it does not have records of products certified under its own Solaris Ready Program, including NetApp products.

### C.   Interrogatory 33

This interrogatory seeks identification of all patents and patent applications resulting from the research and development of WAFL.

Sun argues that this is relevant because WAFL is NetApp's allegedly "pioneering" embodying product. Sun also contends that NetApp propounded an almost identical interrogatory with respect to Sun's ZFS product which Sun answered in full. NetApp argues that these interrogatories are not almost identical because its interrogatory sought information about patents and patent applications associated with an accused product, while Sun's interrogatory seeks information about patents and patent applications associated with an embodying product that is not accused in this action (as it is in the -6053 and -5488 actions). NetApp also contends that this is an effort to obtain additional discovery in other cases after discovery has closed, and it would constitute an undue burden for NetApp to look through its over 250 patents and applications to determine which of them relate to WAFL.

NetApp's reasoning, especially its undue burden argument, is not persuasive. Because this discovery is relevant and easily obtainable, Sun's request is GRANTED.

### D.   Interrogatory 40 and 30(b)(6) Topic 1

These items seek information regarding the testing of NetApp's SANscreen product. NetApp contends that testing of SANscreen was covered by an earlier interrogatory (Interrogatory 22) which it has already responded to and refuses to respond to Interrogatory 40. Sun reasonably questions why NetApp will not then repeat its response with respect to this interrogatory. Sun's request is GRANTED and NetApp is Ordered to respond to Interrogatory 40, even if its response is simply a repetition of its response to Interrogatory 22.

NetApp also argues that Sun had a 30(b)(6) deponent on the topic of testing (under Topic

20) but failed to ask any questions about testing. Sun counters that Topic 20 did not relate to testing of SANscreen, and was instead directed to conception, reduction to practice, development, design and modification. NetApp responds that testing and quality assurance are an integral part of development and modification, and that Sun's counsel acknowledged as much during a deposition of NetApp's witness for Topic 20. See Ho, Ex. H at 194-95. While both parties' positions are reasonable, it is clear that the topic was not addressed during previous depositions, even if it could have been. Sun's request is therefore GRANTED, and NetApp is Ordered to provide a 30(b)(6) witness for no more than three hours to answer questions directly related to testing of SANscreen.

### E.   30(b)(6) Topics 1 and 4

Sun characterizes these deposition topics as covering both support services offered in connection with SANscreen, and the revenue associated with such support services. However, NetApp correctly points out that the deposition topics are really directed to financial information regarding support services, not the support services themselves. See Ho Decl., Ex. I at 4 (topics seek "[a]ll facts and circumstances relating to the revenue, profits, margins, and costs" of any NetApp support service or product or service marketed or sold in conjunction with a NetApp accused product).

NetApp contends that the support services are the same for all of its products, and Sun already took a deposition regarding support services, and financial information regarding these services, in the -6053 and -5488 cases. See Ho Decl., Ex. K at Topic 38; Ex. L at Topic 36; Ex. M at 51-58 (prior deposition testimony covering NetApp support services and related financial information). Sun contends that the previous deposition was limited to the issues in those cases, and did not cover questions regarding the SANscreen suite of products at issue in this case. Sun also disputes NetApp's contention that there is no way to determine revenue associated with support services of SANscreen products, arguing that documents show that this information is available. Joint Brief at 5 (citing Williamson Decl., Ex. B at 448-449). NetApp's previous 30(b)(6) deponent on the topic testified that he did not know how any financial figure for professional services relating to SANscreen was derived, but stated that if he needed the information he would ask the "financial operations team." Id. at 449.

Sun should be given an opportunity to question someone from this group on the revenue associated with support services, since the previous deponent could not provide any information as to how the stated revenue was obtained. Sun's request on this topic is therefore GRANTED, and NetApp is Ordered to provide a 30(b)(6) deponent on the topics covered by the deposition notices, which relate to financial information regarding support services, not the support services themselves.

### F. Production of Financial Information

#### 1. Symantec Agreement

Sun argues that NetApp has failed to produce a NetApp-Symantec resell agreement and blocked testimony on the agreement during a deposition. Sun believes this agreement and testimony relating to it are relevant to damages because both Symantec's product (that NetApp was reselling pursuant to the agreement) and SANscreen are in the heterogeneous storage management market. Sun contends that the terms, payments and royalties NetApp was willing to pay to resell a product in the same market as SANscreen is relevant to damages and consideration of an appropriate royalty. According to Sun, deponent Turner previously testified that he is the only person still at NetApp who was involved in the Symantec agreement, and would be happy to talk about it if not constrained by confidentiality obligations.

NetApp contends that there is no 30(b)(6) notice or document request covering the Symantec agreement, but does not address whether or not the agreement contains a confidentiality provision or is otherwise non-discoverable. However, Sun notes that it does not seek a 30(b)(6) deponent- it seeks the testimony of Mr. Turner in his personal capacity that was blocked due to confidentiality concerns during his previous deposition. Because NetApp has not explained any reason for initially blocking this testimony, Sun's request is GRANTED and NetApp is Ordered to re-produce Mr. Turner in his individual capacity solely to testify as to the Symantec agreement for no more than 1 hour.

With respect to production of the agreement itself, NetApp argues that one of the document requests that Sun believes covers the agreement relates only to "customary licensing practices or norms in the industry," (Request 134). See Ho Decl., Ex. N at 117. This request does not encompass individual license agreements such as the Symantec agreement. NetApp argues that the

6

other potentially relevant document request (Request 154), seeking license agreements for "products, technology, or Patents" from third parties, was "massively overbroad." Id. at 132-33. NetApp therefore limited its response by producing only patent licenses for the NetApp patents-in-suit and pertinent features of the accused NetApp products. The Symantec agreement is relevant to damages and falls within the scope of Request 154, and NetApp is Ordered to produce a copy of the Symantec agreement to be used solely for the purpose of calculating damages.

### 2.     Part Number List

Sun seeks a "part number" list mentioned during a previous deposition to assist it in deciphering Netapp's sales order data. NetApp states that it has agreed to produce this list in exchange for Sun providing discovery in response to NetApp's Interrogatory 35 (addressed in NetApp's motion to compel). Sun agrees to produce a legend for its "corporate codes" in response to NetApp's Interrogatory 35, to the extent such information exists. Joint Brief at n.2. Because there is basic agreement, the parties are Ordered to exchange NetApp's "part number" list for Sun's "corporate code" list, and are encouraged to work together to provide information to assist the other in understanding documents previously produced without resort to Court involvement.

### 3.     SANscreen Revenue Documents

Sun seeks deponent to testify regarding revenue associated with SANscreen products and an updated summary spreadsheet that reflects this revenue. NetApp contends that it cannot produce this information because it does not exist and Sun already has whatever incomplete information is available. It argues that NetApp does not break out SANscreen revenue, and the documents Sun points to show only a dollar amount for orders, but not deferred revenues. NetApp points to deposition testimony stating that the closest thing NetApp would have to this is a summary financial spreadsheet where SANscreen would fall under an "add on" line, and that the deponent had never seen a further breakout of what portion of the "add on" is attributable to SANscreen. Ho Decl., Ex. Q at 261-62.

NetApp persuasively argues that it does not break out financial information to isolate SANscreen in the way Sun would like. However, Sun's request is GRANTED IN PART, and NetApp is Ordered to produce any other documents relating to SANscreen revenue, to the extent any

such documents exist. Sun's request for another deponent is DENIED because prior depositions have indicated that there is no other information to be gained on this topic.

**II.      Discovery NetApp Seeks From Sun**

      **A.      Testimony Re: Sun's Competitive Analysis of NetApp Products**

NetApp's deposition topic 71 is overbroad and seeks testimony on any analysis of any NetApp product conducted by or on behalf of Sun. See Ho Decl., Ex. 1 at Topic 71. NetApp states that it has offered to narrow the scope to include only accused and embodying products and products that compete with Sun accused products, but Sun refused the request.

Sun argues that it does not have a deponent on this topic because its former competitive intelligence group is defunct and its members no longer work at Sun- and NetApp has already deposed one former member of the group. Sun also argues that obtaining information to prepare a witness would require gathering information from over 100 product groups that might have done a competitive analysis of NetApp products, and that NetApp has "already questioned more than 50 Sun employees and former employees regarding competitive analysis and evaluations of NetApp products." NetApp responds that Sun can prepare a witness based on other Sun employees with knowledge of the competitive intelligence group's work and the group's existing documents, and that an abundance of potentially relevant information within various product groups should not justify failure to produce testimony. NetApp does not address Sun's point that it has already questioned more than 50 Sun employees relating to competitive analysis.

Though it is a close question, NetApp's request is DENIED. Sun has persuasively argued that it does not have a deponent, nor can it reasonably prepare a deponent, on this overbroad topic.

      **B.      Testimony Re: Interactions With Onaro**

NetApp seeks testimony regarding Sun's first awareness of communications, negotiations, relationships or agreements between Sun and Onaro with respect to the NetApp accused products. See Joint Brief at 2:13-15.[1] NetApp argues that this information is relevant to non-infringement,

---

[1] The deposition requests that NetApp cites, Topics 1 and 2, are broader than this. Read literally, Topic 2 would encompass anything relating to Sun's first awareness of the NetApp accused products and their functionality, including when Sun first became aware of potential infringement, and is not limited to Onaro. However, NetApp's argument focuses on Onaro so relief is limited to Onaro.

8

laches and damages because Sun was aware of Onaro and SANscreen as early as 2005, and had actual knowledge of the allegedly infringing activities – as opposed to a passing familiarity – by at least that time. See IXYS Corp. v. Advanced Power Tech., 321 F. Supp. 2d 1156, 1160-61 (N.D. Cal. 2004).

Sun counters that it has previously produced a witness on these topics relating to the Sun patents-in-suit, and that the information sought (relating to the accused products) is irrelevant and overbroad. Sun argues that the information is not relevant to infringement, laches or damages because the testimony would only go to when Sun was first aware of the product in the marketplace, not whether the product was infringing. Sun also contends that, to reasonably prepare a witness on the topic, it would need to canvas thousands of current and former employees about the Onaro relationship and the burden of this outweighs any potential need for the information.

Testimony about Sun's early discussions and dealings with Onaro relating to the accused product is relevant to infringement and laches, and therefore damages. Sun's argument that testimony about when it was first aware of the product is irrelevant is weak, as this testimony may also lead to information about when Sun knew or should have known of potential infringement, which is relevant. Also, NetApp correctly points out that it is not asking Sun to canvass all 29,000 employees, but only to reasonably prepare a witness. NetApp's request is therefore GRANTED. Sun is Ordered to produce a 30(b)(6) witness on the topic, with the understanding that Sun will take reasonable steps to educate the witness on the topic, and NetApp should not object based on lack of preparedness unless it appears that Sun has not such taken reasonable steps.

**C.  Testimony Re: Use of Sun Accused Products**

NetApp seeks testimony regarding use of Sun accused products by Sun, its employees and specified third parties. See Ho Decl., Ex. 1 at Topics 9-11, 43-44.

Sun does not contend that these requests are overbroad or seek irrelevant information. Instead Sun contends that it does not track internal or external use of its products and therefore cannot produce a witness on these topics. Sun concedes that it tracks the number of downloads and registrations relating to Solaris 10 and OpenSolaris, but states that this numeric metric does not indicate how a third party is actually or potentially using the programs that would be responsive to

9

1   the deposition topics in question.  NetApp argues that Sun's position that it does not track any of this
2   information is "inconceivable," and that deposition testimony shows that some groups within Sun
3   are mandated to use OpenSolaris, which incorporates ZFS.  See Ho, Ex. 7 at 84.  Additionally, Sun's
4   interrogatory responses and deposition testimony show that Sun has at least some tools for tracking
5   third party use.  See Ho Decl., Ex. 8 at 5; Ex. 9 at 4-6; Ex. 10 at 4.

6   Sun's position that it cannot provide any information on these topics is somewhat
7   unreasonable in light of evidence that at least some Sun employees are mandated to use Sun
8   products, and it has some capability to track (at least numerically) third party use.  Therefore
9   NetApp's request is GRANTED, and Sun is Ordered to produce a 30(b)(6) witness on the topic,
10  with the understanding that Sun will take reasonable steps to educate the witness on the topic, and
11  NetApp should not object based on lack of preparedness unless it appears that Sun has not such
12  taken reasonable steps.  Sun is also ordered to supplement its response to Interrogatory 17 to update
13  it with information since September 2008, and to produce documents that track support of the 7000
14  series, as Sun offered to do in the Joint Brief.  See Joint Brief at 13.

**D.    Testimony Re: Sun-Veritas Agreement**

16  In the parties' initial joint two-page letter, Sun stated that it "has agreed to produce a
17  witness who participated in the negotiations of the Sun-Veritas agreement, to the extent such a
18  person exists.  Sun also agrees to produce information regarding payments Sun made to Veritas
19  pursuant to the agreement, to the extent such information exists."  Based on this concession, the
20  Court's November 30, 2009 Order required Sun to produce a witness and information on the Sun-
21  Veritas agreement to the extent the information exists.

22  Sun now claims that it cannot find any witness knowledgeable about the Sun-Veritas
23  negotiations thirteen years after the fact, after interviewing six individuals within Sun to find an
24  appropriate witness.  See Williamson Decl. ¶ 6.  Sun further claims that it is still investigating
25  whether it possesses information regarding payments made to Veritas pursuant to the agreement, and
26  agrees to produce a deponent to testify regarding payments for two hours only if documents on the
27  subject are not self-explanatory.  NetApp counters that, even if no knowledgeable individual remains
28  at Sun, Sun has a duty to prepare a 30(b)(6) witness based on documentation and responsive

information provided by those tangentially related to the transaction. NetApp further contends that Sun cannot impose a unilateral time limit on the deposition.

Sun's declaration does not address efforts made to locate documentation relating to payments made to Veritas under the agreement, but its portion of the brief states that it is still investigating whether these documents exist. Because it is unlikely that there is <u>no</u> remaining documentation regarding this agreement and/or payments made pursuant to it, NetApp's request for documents is GRANTED. Sun is ordered to undertake all reasonable efforts to locate any such documentation and provide a deponent to testify about the documents for a period of no more than three hours. Regarding the Sun-Veritas negotiations, Sun has persuasively argued that it cannot prepare a witness on the topic because there is no one remaining with knowledge, and therefore NetApp's request as to testimony on the negotiations is DENIED.

**E.     Testimony and Documents Re: Sun Prior Art and Product Comparisons**

NetApp seeks a 30(b)(6) witness to testify about the structure, function and operation of three Sun prior art products – SunNetManager, SyMON, and SunReMon.

NetApp argues that a recent deposition confirmed that current Sun employee Michael Wookey has personal knowledge about SunNetManager and SunReMon, and that Sun has internal documentation regarding its historical products. NetApp also argues that documentation about these products was updated on the SunSolve Website as recently as 2009, but Sun has not produced all documents relating to these products. Sun argues that it has not been able to locate a witness on these products, and does not address NetApp's point regarding Mr. Wookey, but agrees to produce a witness if it is able to identify one.

NetApp's request is GRANTED, and Sun is Ordered to produce Mr. Wookey or some other knowledgeable deponent to testify about these products and any available historical documentation relating to them. With respect to the documents on the SunSolve Website, Sun argues that they were not updated in 2009 (and indicates that the date could reflect the date that NetApp counsel reviewed the documents and not the date of creation or update), and that it has produced all documents relating to these products. Sun is Ordered to produce any additional documents on these products to the extent they have not previously been provided, and to provide a

11

declaration confirming what it has done to search for and produce all responsive documents.

NetApp also seeks 30(b)(6) testimony on the structure, function and operation of three other Sun products – Tapestry, MPxIO and Solaris – as well as any comparisons between these products and SANscreen.  Sun contends that the only employee with knowledge of these topics is Hyon Kim, and Mr. Kim has already been questioned on these topics in his personal capacity.  Sun states that there is no other information to be gained from Mr. Kim through a 30(b)(6) deposition.  NetApp counters that its prior deposition of Mr. Kim was as a named inventor on the '951 patent, and should not substitute for corporate testimony on how the products actually functioned that is relevant to a prior art analysis.  The court agrees with NetApp that Mr. Kim's personal testimony as a patent inventor is different than corporate testimony about prior art, even if the topics to be covered overlap.  NetApp's request is therefore GRANTED.  Sun is Ordered to produce Mr. Kim as a 30(b)(6) witness on the topics listed for a deposition of no more than two hours, limited in scope to cover only prior art analysis of the products in question (and any comparison to SANscreen) from a corporate perspective and shall not be duplicative of Mr. Kim's prior deposition.

### F.    Interrogatories 34 and 35

Interrogatory 34 seeks information regarding testing of each Sun Accused Product.  Sun argues that the request is overbroad in that it seeks testing information about over 100 hardware products that are irrelevant to this litigation.  NetApp counters that the request is relevant to infringement and willfulness because it reveals information about design, features and operation.  NetApp states it has "made clear" that the interrogatory is directed primarily toward testing of pertinent accused features.  NetApp also notes that Sun propounded similar interrogatories regarding testing of NetApp products, and NetApp provided a substantive response.  This interrogatory is overbroad, and NetApp's request is therefore GRANTED IN PART and DENIED IN PART.  NetApp is Ordered to limit its request to testing of pertinent accused features of the Accused Products, and Sun is Ordered to respond to the interrogatory as modified.

Interrogatory 35 seeks information about support, maintenance and other services Sun provides for the Accused Products.  NetApp concedes that Sun has provided some relevant documents on this topic, and that Sun has agreed to further supplement its response in its portion of

the Joint Brief. However, NetApp argues that the information is incomplete because Sun has not agreed to "identify customers for hardware service or identify hardware learning services." Joint Brief at n.8. Sun responds that NetApp raised this issue for the first time on December 9 during the drafting of the Joint Brief, and Sun does not understand what NetApp means. NetApp's final complaint regarding Interrogatory 35 is unclear, and the parties are Ordered to further meet and confer on this issue because Sun's supplemental response to the interrogatory may satisfy NetApp's concern without the need for Court involvement.

### III.     Sealing Requests

The parties have also submitted requests to have various documents relating to the Joint Briefs filed under seal. Specifically, they seek to file under seal:

**A. Discovery NetApp Seeks From Sun**
- The unredacted version of the Joint Brief
- Exhibits 2, 4, 8, 9, 12 and 26 to the Ho Declaration in Support
- Exhibits A and B to the Williamson Declaration in Support

**B. Discovery Sun Seeks From NetApp**
- Exhibits B, C, H, J, M, O, P, and Q to the Ho Declaration in Support
- Exhibits B, C, and D to the Williamson Declaration In Support

The parties have submitted declarations stating that the documents listed above contain confidential information, much of which has been designated as Confidential or Highly Confidential under the parties' stipulated protective order, that could cause competitive harm if disclosed. Neither party has filed an objection to the other's sealing request. The Court finds that good cause has been shown for sealing because the documents contain confidential business information which could cause harm to the parties if publicly disclosed. The parties' respective sealing requests are therefore GRANTED in their entirety.

**IT IS SO ORDERED.**

Dated: December 21, 2009

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge